**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**UNITED STATES OF AMERICA**


|  |  |
|---|---|
| **PLAINTIFFS,** | **Civil Action No. 1:10-cv-996** |
|  | **Judge Kathleen M. O'Malley** |
| **V.** | **Magistrate Judge Greg White** |

**AK STEEL CORP., ET AL.,**


**DEFENDANTS.**


**<u>RD/RA CONSENT DECREE</u>**

# TABLE OF CONTENTS

**Page**

I. Background .......................................................................................................... 1

II. Jurisdiction ......................................................................................................... 3

III. Parties Bound ..................................................................................................... 3

IV. Definitions .......................................................................................................... 3

V. General Provisions ............................................................................................. 7

VI. Performance of the Work By Settling Performing Defendants ......................... 9

VII. Remedy Review ................................................................................................ 15

VIII. Quality Assurance, Sampling, and Data Analysis .......................................... 15

IX. Access and Institutional Controls .................................................................... 17

X. Reporting Requirements ................................................................................... 21

XI. EPA Approval of Plans and Other Submissions .............................................. 23

XII. Project Coordinators ........................................................................................ 24

XIII. Performance Guarantee .................................................................................... 25

XIV. Certification of Completion .............................................................................. 28

XV. Emergency Response ........................................................................................ 30

XVI. Payments for Response Costs ........................................................................... 30

XVII. Indemnification and Insurance ......................................................................... 33

XVIII. Force Majeure .................................................................................................. 34

XIX. Dispute Resolution ........................................................................................... 36

XX. Stipulated Penalties .......................................................................................... 38

XXI. Covenants Not to Sue by Plaintiff .................................................................... 42

XXII. Covenants by Settling Defendants and Settling Owner Defendant ................. 45

XXIII. Effect of Settlement; Contribution Protection ................................................. 47

XXIV. Access to Information ....................................................................................... 48

XXV. Retention of Records ........................................................................................ 49

XXVI. Notices and Submissions .................................................................................. 50

XXVII. Effective Date .................................................................................................. 51

XXVIII. Retention of Jurisdiction .................................................................................. 51

XXIX. Appendices ....................................................................................................... 52

XXX. Community Relations ....................................................................................... 52

**TABLE OF CONTENTS**

(continued)

Page

XXXI.      Modification ............................................................................................... 53

XXXII.     Lodging and Opportunity for Public Comment ....................................... 53

XXXIII.    Signatures/Service ...................................................................................... 54

XXXIV.     Final Judgment............................................................................................ 54

I.     <u>Background</u>

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.     The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Chemical Recovery Systems Superfund Site (the "CRS Site") in Elyria, Ohio, together with accrued interest recoverable pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a); and (2) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Ohio, (the "State") on August 1, 2008, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Department of the Interior on August 1, 2008 of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee to participate in the negotiation of this Consent Decree.

E.     The defendants that have entered into this Consent Decree do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.     In response to a release or a substantial threat of a release of hazardous substances at or from the Site, a group of 24 potentially responsible parties ("PRPs") at the Site (the "CRS Site Group") signed an Administrative Order on Consent ("AOC") on May 29, 2002, and agreed thereby to conduct a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430. Field work on the RI/FS began on July 7, 2003.

G.     On September 30, 2003, a group of 83 *de minimis* PRPs signed an AOC to settle their liability pursuant to Section 122(g) of CERCLA for response costs incurred by EPA at the Site, the proceeds of which were placed in a special account for use at the CRS Site ("Chemical Recovery Systems Special Account").

H.     The CRS Site Group completed a Remedial Investigation Report and a Feasibility Study Report which became final on October 30, 2007 when the Record of Decision for the Site ("ROD") was executed.

1

I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on July 11, 2007, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Region 5 Superfund Division Director based the selection of the response action.

J.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final ROD executed on October 30, 2007, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the ROD was published in accordance with Section 117(b) of CERCLA.

K.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Performing Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Performing Defendants shall constitute a response action taken or ordered by the President.

M.      EPA has determined the following:

1.      prompt settlement with each Settling Non-Performing Defendant is practicable and in the public interest within the meaning of Section 122 (g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1);

2.      the payment to be made by each Settling Non-Performing Defendant under this Consent Decree involves only a minor portion of the response costs at the Site within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1), based upon EPA's estimate that the total response costs incurred and to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund and by other persons is between $7 million and $10 million; and

3.      the amount of hazardous substances contributed to the Site by each Settling Non-Performing Defendant and the toxic or other hazardous effects of the hazardous substances contributed to the Site by each Settling Non-Performing Defendant are minimal in comparison to other hazardous substances at the Site within the meaning of Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A). This is because the amount of hazardous substances contributed to the Site by each Settling Non-Performing Defendant does not exceed 1% of the hazardous substances at the Site and the hazardous substances contributed by each Settling Non-Performing Defendant to the Site are not significantly more toxic or of significantly greater hazardous effect than other hazardous substances at the Site.

N.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated

2

litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants and Settling Owner Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants and Settling Owner Defendant waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants and Settling Owner Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and Settling Owner Defendant and their heirs, successors and assigns. Any change in ownership or corporate status of a Settling Defendant and Settling Owner Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's and Settling Owner Defendant's responsibilities under this Consent Decree.

3.    Settling Performing Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Performing Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Performing Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Performing Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Performing Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.  Definitions

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Chemical Recovery Systems Special Account" shall mean the special account established at the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3).

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 119.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 99 of Section XXI (Work Takeover). Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from September 30, 2008, to the date of entry of this Consent Decree.

"Groundwater Contingency Remedial Measures" shall mean those remedial measures required pursuant to Paragraph 13 if EPA determines that Monitored Natural Attenuation will not result in the attainment of Performance Standards for groundwater within a reasonable time frame, which will be evaluated according to Section II.M of the SOW.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between September 30, 2008 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Monitored Natural Attenuation" generally refers to the reliance on natural attenuation processes, within the context of a carefully controlled and monitored site remediation approach, to

4

achieve groundwater Performance Standards, and shall have the same meaning and scope as set forth in the ROD and the Statement of Work ("SOW").

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"OEPA" shall mean the Ohio Environmental Protection Agency and any successor departments or agencies of the State.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the SOW.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the Settling Defendants and Settling Owner Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 30, 2008 plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and Section 11 of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on October 30, 2007, by the Regional Administrator, EPA Region 5, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Performing Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Performing Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Settling Performing Defendants and Settling Non-Performing Defendants but not Settling Owner Defendant.

"Settling Non-Performing Defendants" shall mean those Parties identified in Appendix D.

"Settling Owner Defendant" shall mean Dorothy Obitts, individually and as trustee of the Obitts Family Trust, but does not include the Obitts Chemical Company, the Obitts Chemical Services Company or Chemical Recovery Systems, Inc., or Chemical Recovery Sytems of Ohio, their agents, successors, assigns, insurers, or indemnitors.

"Settling Performing Defendants" shall mean the following Parties:

> CNA Holdings LLC (Celanese)
> Akzo Nobel Paints LLC (f/k/a The Glidden Company)
> The Goodyear Tire & Rubber Company
> Chevron Environmental Management Company, for itself and on behalf of
>     Kewanee Industries, Inc.
> PPG Industries, Inc.
> The Sherwin Williams Company
> United States Steel Corporation (f/k/a USX Corporation) and its subsidiaries on
>     behalf of Alside, Inc.
> Avery Dennison Corporation
> Ashland Inc.
> Mattel, Inc. (f/k/a Fisher Price Toys)
> Goodrich Corporation
> Jamestown Paint & Varnish
> Alcatel-Lucent USA Inc.
> Continental Tire North America, Inc. (f/k/a GenCorp)
> Valspar Corporation.

"Site" shall mean the Chemical Recovery Systems Superfund Site, encompassing approximately 2 acres, located at 142 Locust Street in Elyria, Lorain County, Ohio, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of Ohio.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Performing Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "solid waste" under Ohio Administrative Code (OAC) 3745-27-01 (S)(23), as well as any "hazardous waste" as defined in Ohio Revised Code (ORC) 3752.01 (L).

"Work" shall mean all activities Settling Performing Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V.     General Provisions

5.     Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Performing Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants and Settling Owner Defendant as provided in this Consent Decree.

6.     Commitments by Settling Defendants.

a.     Settling Performing Defendants shall finance with the assistance of the cash payments of Settling Non-Performing Defendants and Settling Performing Defendants shall perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Performing Defendants and approved by EPA pursuant to this Consent Decree. Settling Performing Defendants with the assistance of the cash payments of Settling Non-Performing Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

b.     The obligations of Settling Performing Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Performing Defendants to implement the requirements of this Consent Decree, the remaining Settling Performing Defendants shall complete all such requirements.

c.     As negotiated between Settling Non-Performing Defendants and Settling Performing Defendants, the Settling Non-Performing Defendants individually have agreed to pay the Settling Performing Defendants no later than fifteen (15) days after this Consent Decree is lodged with the Court, all monies necessary to satisfy the claims Settling Performing Defendants have against the Settling Non-Performing Defendants arising pursuant to performance under this Consent Decree. Accordingly, subject to the United States' reservations of rights set forth in Paragraphs 97, and 98 of Section XXI (Covenants Not to Sue by Plaintiffs), the Settling Non-Performing Defendants shall have no further obligations under this Consent Decree once

payment by the Settling Defendants has been made pursuant to Paragraph 66 except as otherwise specifically set forth in this Consent Decree.

        d.     Settling Owner Defendant shall perform the Work assigned to Settling Owner Defendant in accordance with the applicable provisions of this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein.

        7.     <u>Compliance With Applicable Law</u>.  All activities undertaken by Settling Performing Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Performing Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

        8.     <u>Permits</u>.

        a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Performing Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

        b.     The Settling Performing Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

        c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

        9.     <u>Notice to Successors-in-Title</u>.

        a.     With respect to any property owned or controlled by Settling Owner Defendant that is located within the Site, within fifteen (15) days after the entry of this Consent Decree, the Settling Owner Defendant shall submit to EPA for review and approval a notice to be filed with the Recorder's Office, Lorain County, State of Ohio, which shall provide notice to all successors in-title that the property is part of the Site, that EPA selected a remedy for the Site on October 30, 2007, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy.  Such notice(s) shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Settling Owner Defendant shall record the notice(s) within 10 days of EPA's approval of the notice(s). The Settling Owner Defendant shall provide EPA with a certified copy of the recorded notice(s) within 10 days of recording such notice(s).

8

b.　　At least thirty (30) days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Settling Owner Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least thirty (30) days prior to such conveyance, the Settling Owner Defendant conveying the interest shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c.　　In the event of any such conveyance, the Settling Owner Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Owner Defendant. In no event shall the conveyance release or otherwise affect the liability of the Settling Owner Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of the United States. If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

VI.　　Performance of the Work By Settling Performing Defendants

10.　　Selection of Supervising Contractor.

a.　　All aspects of the Work to be performed by Settling Performing Defendants pursuant to Sections VI (Performance of the Work by Settling Performing Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the State. Within thirty (30) days after the lodging of this Consent Decree, Settling Performing Defendants shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Performing Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Performing Defendants propose to change a Supervising Contractor, Settling Performing Defendants shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

9

      b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Performing Defendants in writing. Settling Performing Defendants shall submit to EPA and the State a list of contractors, including the qualifications of each contractor, that would be acceptable to them within thirty (30) days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Performing Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within thirty (30) days of EPA's authorization to proceed.

      c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Performing Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Performing Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

    11.    <u>Remedial Design</u>.

      a.     Within sixty (60) days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10, Settling Performing Defendants shall submit to EPA and the State a draft work plan for the design of the Remedial Action at the Site ("Draft Remedial Design Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW, and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and/or the SOW. Within thirty (30) days after receipt of comments from EPA the Settling Performing Defendants shall submit the Final Remedial Design Work Plan. Upon its approval by EPA, the Final Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. Within sixty (60) days after EPA's issuance of an authorization to proceed, the Settling Performing Defendants shall submit to EPA and the State a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

      b.     The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of: (1) a Health and Safety Plan; (2) a Field Sampling Plan; (3) a Quality Assurance Project Plan ("QAPP") in accordance with Section VIII ("Quality Assurance, Sampling, and Data Analysis"); (4) an Additional Groundwater Studies Work Plan; (5) a Storm Sewer Repair Work Plan; (6) A Soil Cleanup Verification Work Plan; (7) a Natural Attenuation Monitoring Plan; (8) an Operation and Maintenance ("O&M") Plan; (9) a Construction Quality Assurance Project Plan ("CQAPP"); (10) a Preliminary Design; (11) an Intermediate Design; (12) a Pre-final Design; and (13) a Final Design.

      (1)     The preliminary design submittal shall include, at a minimum, the following: (1) preliminary plans, drawings, and sketches, including design calculations; (2) design assumptions and parameters; (3) proposed cleanup verification methods, including compliance with applicable or relevant and appropriate requirements ("ARARs"); (4) outline of required specifications; (5) proposed staging/locations of processes/construction

activity; (6) expected long-term monitoring and operation requirements; (7) real estate, easement and/or permit requirements; and (8) preliminary construction schedule, including contracting strategy.

(2)     The intermediate design submittal shall be a continuation and expansion of the preliminary design and shall include intermediate design and specifications. The intermediate design submittal shall also include, at a minimum, the following: (1) draft CQAPP; (2) draft O&M Plan; (3) draft Natural Attenuation Monitoring Plan; (4) Draft Contingency Plan; (5) Draft Soil Cleanup Verification Work Plan; (6) draft Storm Sewer Repair Work Plan; (7) draft project schedule; (8) final Health and Safety Plan; (9) final QAPP; and (10) final Field Sampling Plan. Any value engineering proposals must be identified and evaluated during this review.

(3)     The pre-final/final design submittals shall include pre-final/final design and specifications. The pre-final/final design submittals shall also include, at a minimum, the following: (1) final CQAPP; (2) final O&M Plan; (3) final Natural Attenuation Monitoring Plan; (4) final Contingency Plan; (5) final Soil Cleanup Verification Work Plan ; (6) final Storm Sewer Repair Work Plan; (7) capital and O&M cost estimate; and (8) a final project schedule. The CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a Quality Assurance Official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

c.     Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Performing Defendants shall implement the Final Remedial Design Work Plan. The Settling Performing Defendants shall submit to EPA and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Performing Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

d.     Upon its approval by EPA, Final Design shall be incorporated into and become enforceable under this Consent Decree.

12.     Remedial Action.

a.     Within forty-five (45) days after EPA approval of the Final Design submittal, Settling Performing Defendants shall submit to EPA and the State a draft work plan for the performance of the Remedial Action at the Site ("Draft Remedial Action Work Plan"). The Draft Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Settling Performing Defendants shall submit the Final Remedial Action Work Plan within thirty (30) days after receipt of EPA comments on the Draft Remedial Action Work Plan. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent

11

Decree. At the same time as they submit the Remedial Action Work Plan, Settling Performing Defendants shall submit to EPA and the State an updated Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

       b.     The Remedial Action Work Plan shall include the following activities for which methodologies, plans and schedules should be included in the Remedial Action Work Plan: (1) a detailed description of the technical approach for the remediation and construction activities in accordance with the Final Design submittal and the ROD, including specification of the necessary procedures, inspections, and deliverables; (2) a comprehensive construction management schedule for completion of each major activity and submittal; (3) a description of operation and maintenance activities; (4) a description of performance monitoring; (5) a description of the overall management strategy; (6) a description of the types of pre-remedial action activities to be conducted prior to solicitation of a remedial action subcontractor; (7) a description of the responsibility and authority of all organizations and key personnel involved with the implementation, including a description of the qualifications of key personnel directing the remedial action and the contractor personnel; (8) construction plans and specifications to implement the remedial action at the Site as described in the CD and the SOW, such as plans and/or maps showing the extent of excavation to be conducted and the proposed locations of construction activity; (9) provisions for air monitoring and dust suppression, contingency planning, decontamination pad construction, maintenance, and procedures for trucks leaving the Site; (10) soil excavation and handling procedures; and (11) updated versions, if necessary of the following plans: Field Sampling Plan, QAPP, and Health and Safety Plan.

       c.     Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Performing Defendants shall implement the activities required under the Remedial Action Work Plan. The Settling Performing Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Performing Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

     13.    <u>Groundwater Contingency Remedial Measures</u>. If EPA determines, pursuant to Section II.M.3 of the SOW, that Monitored Natural Attenuation will not result in the attainment of the Performance Standards for groundwater within a reasonable time frame, which will be evaluated according to Section II.M of the SOW, Settling Performing Defendants shall implement a contingency groundwater remedy as part of the Remedial Action in accordance with the ROD, the SOW, and an EPA-approved Groundwater Contingency Plan. A draft Groundwater Contingency Plan shall be submitted by the Settling Performing Defendants ninety (90) days after Settling Performing Defendants' receipt of written notice that EPA has determined that additional groundwater remedial measures are necessary.

       a.     EPA's determination under this Paragraph as to whether Monitored Natural Attenuation will meet the Performance Standards within a reasonable time frame shall be informed by the following two guidance documents: "Performance Monitoring of MNA Remedies for

VOCs in Ground Water," EPA/600/R-04/027, April 2004, and "Use of Monitored Natural Attenuation at Superfund, RCRA Corrective Action, and Underground Storage Tank Sites," OSWER Directive 9200.4-17P, April 1999.

      b.     EPA shall make the decision as to whether to invoke additional groundwater remediation measures during its periodic review of the remedial action, which will occur at least every five years, in accordance with CERCLA Section 121(c). If Settling Performing Defendants object to EPA's decision to invoke additional groundwater remediation measures pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution).

      c.     The contingency remedy may include actions such as pumping and treating groundwater, installation of permeable reactive barriers, subsurface injection of a substrate to promote oxidative or reductive degradation, or other innovative technologies. If EPA determines that it is technically impracticable to restore groundwater to drinking water standards using available remedial technologies, the Agency may issue a technical impracticability (TI) waiver. In the case of a TI waiver, an alternative cleanup strategy that is fully protective of human health and the environment would need to be identified.

    14.    The Settling Performing Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under the SOW or this Consent Decree.

    15.    <u>Modification of the SOW or Related Work Plans</u>.

      a.     If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

      b.     For the purposes of this Paragraph 15 and Paragraphs 57 and 58 only, the "scope of the remedy selected in the ROD" is: (1) excavation and off-site disposal at a permitted facility of contaminated soil located in the northwest corner, which is approximately 0.5 acre, of the CRS Site (the lateral extent of the excavation will be determined during pre-design) to a depth of four (4) feet; (2) surficial soil sampling verification to document the level and type of contaminants left in place; (3) backfill of excavated area with clean fill and installation of a cover over the area consisting of at least two feet of clean soil; (4) application of marker prior to backfilling to delineate contaminated soils are underneath; (5) installation of a cover over the remainder of the Site consisting of at least two feet of clean soil; (6) compaction and appropriate grading of all covers for erosion control; (7) Monitored Natural Attenuation of groundwater (and, if necessary, Groundwater Contingency Remedial Measures) to assure that groundwater is restored to drinking water standards within a reasonable time frame, which will be evaluated according to Section II.M of the SOW; (8) implementation of institutional controls; (9) installation of perimeter fencing; (10) air monitoring and dust suppression during construction; (11) closure of

two on-site sumps; (12) demolition of two on-site structures; (13) repair of sewer line; and (14) an estimated 30 years operation and maintenance.

        c.     If Settling Performing Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 77 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

        d.     Settling Performing Defendants shall implement any Work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

        e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

     16.     Settling Performing Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

     17.     Settling Performing Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

        a.     The Settling Performing Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Performing Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

        b.     The identity of the receiving facility and state will be determined by the Settling Performing Defendants following the award of the contract for Remedial Action construction. The Settling Performing Defendants shall provide the information required by Paragraph 17(a) as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

        c.     Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Performing Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Performing Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII.  Remedy Review

18.  <u>Periodic Review.</u>  Settling Performing Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

19.  <u>EPA Selection of Further Response Actions.</u>  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

20.  <u>Opportunity To Comment.</u>  Settling Defendants and Settling Owner Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

21.  <u>Settling Performing Defendants' Obligation To Perform Further Response Actions.</u>  If EPA selects further response actions for the Site, the Settling Performing Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 94, 95, or 96  (United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Performing Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 94, 95, or 96 of Section XXI (Covenants Not to Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 77 (record review).

22.  <u>Submissions of Plans.</u>  If Settling Performing Defendants are required to perform the further response actions pursuant to Paragraph 21, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Performing Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII.  Quality Assurance, Sampling, and Data Analysis

23.  Settling Performing Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/2408-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), the Uniform Federal Policy for Quality Assurance Project Plans found at http://www.epa.gov/swerffrr/documents/qualityassurance.htm and subsequent amendments to such guidelines upon notification by EPA to Settling Performing Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

15

24.     Sixty (60) days after Notice of Authorization to Proceed with Remedial Design and prior to the commencement of any monitoring project under this Consent Decree, Settling Performing Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.

25.     Settling Performing Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Performing Defendants in implementing this Consent Decree. In addition, Settling Performing Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Performing Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Performing Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods.

26.     Settling Performing Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Performing Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QAJR-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Performing Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

27.     Upon request, the Settling Performing Defendants shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Settling Performing Defendants shall notify EPA and the State not less than thirty (30) days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA and the State shall allow the Settling Performing Defendants to take split or duplicate samples of any samples they take as part of the Plaintiff's oversight of the Settling Performing Defendants' implementation of the Work.

28.     Settling Performing Defendants shall submit to EPA and the State two (2) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of

Settling Performing Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise. Settling Performing Defendants shall also submit electronic copies of the data consistent with formatting requirements for EPA Region 5 electronic data deliverables.

29.     Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

IX.     Access and Institutional Controls

30.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants or Settling Owner Defendant, such Settling Defendant or Settling Owner Defendant shall:

a.     commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 99 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Performing Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Performing Defendants' compliance with this Consent Decree; and

17

(10)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.    commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to refraining from on-site excavations, use of the site as a landfill, mining, invasive construction, drilling, installing groundwater wells for potable and non-potable uses at the site, or in areas downgradient from the Site with contaminated groundwater, and any other uses which would be inconsistent with the Remedial Action, unless otherwise required by this Decree and/or prior approval from EPA has been obtained; and

c.    execute and record in the Recorder's Office of Lorain County, State of Ohio, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 30(a) of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 30(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Owner Defendant shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Settling Performing Defendants and their representatives, and (iv) other appropriate grantees. Such Settling Defendant or Settling Owner Defendant shall, within sixty (60) days of lodging of this Consent Decree, submit to EPA:

(1)    A draft easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of Ohio;

(2)    A current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, such Settling Defendant or Settling Owner Defendant is unable to obtain release or subordination of such prior liens or encumbrances);

Within thirty (30) days of EPA's approval and acceptance of the easement and the title evidence, such Settling Defendant or Settling Owner Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder's Office of Lorain County, Ohio. Within thirty (30) days of recording the easement, such Settling Defendant or Settling Owner Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

18

      d.     The restrictions regarding future development of the Site that are required by this Paragraph may be modified subject to written approval by EPA based on demonstration by such Settling Defendant or Settling Owner Defendant that the proposed use of the Site will not interfere with the remedy or pose a threat to human health and the environment. The restrictions regarding the future installations of groundwater drinking water wells may be lifted, upon written approval of EPA, based upon a demonstration by such Settling Defendant or Settling Owner Defendant that groundwater remediation standards have been met and maintained.

      31.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants and Settling Owner Defendant, Settling Performing Defendants shall use best efforts to secure from such persons:

      a.     an agreement to provide access thereto for Settling Performing Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 30(a) of this Consent Decree;

      b.     an agreement, enforceable by the Settling Performing Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to those identified in Paragraph 30(b);

      c.     and the execution and recordation in the Recorder's Office of Lorain County, State of Ohio, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 30(a) of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 30(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Performing Defendants and their representatives, and (iv) other appropriate grantees. Within forty-five (45) days of the identification of property where access and/or land/water use restrictions are needed to implement this Consent Decree that is owned or controlled by persons other than any of the Settling Performing Defendants or Settling Owner Defendant, Settling Performing Defendants shall submit to EPA for review and approval with respect to such property:

      (1)     A draft easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of Ohio, and

      (2)     A current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are

approved by EPA or when, despite best efforts, Settling Performing Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

Within thirty (30) days of EPA's approval and acceptance of the easement, map of the Site and the title evidence, Settling Performing Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's Office of Lorain County, State of Ohio. Within thirty (30) days of the recording of the easement, Settling Performing Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If an easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

        d.     The restrictions regarding future development of the Site that are required by this Paragraph may be modified subject to written approval by EPA based on demonstration by the Settling Performing Defendants that the proposed use of the Site will not interfere with the remedy or pose a threat to human health and the environment. The restrictions regarding the future installations of groundwater drinking water wells may be lifted, upon written approval of EPA, based upon a demonstration by Settling Performing Defendants that groundwater remediation standards have been met and maintained.

      32.    Settling Performing Defendants shall, within sixty (60) days of lodging of this Consent Decree, submit to EPA an Institutional Controls (IC) Work Plan for review and approval with respect to property subject to Paragraphs 30 and 31, which shall include:

        a.     A map of the Site showing the boundaries of the Site, Site features, Site zoning designations, streets, easements or other encumbrances, property ownership, assessor's parcel number or other recorded plat or survey information, and an indication that the use of the entire Site is restricted to commercial/industrial purposes;

        b.     Geographic Information System ("GIS") coordinates showing the boundaries of the Site, Site features including monitoring wells, and easements or other encumbrances. The accuracy of the coordinates should be identified and coordinates should be submitted in ESRI polygon shape files. The shape files shall be projected into the UTM NAD83 system (or other system specified by EPA) and the UTM zone shall be identified. Attribute names should be provided in the shape file for each polygon submitted; and

        c.     A proposal for an IC monitoring plan to be included as part of the Operation and Maintenance plan to ensure that ICs are maintained, are complied with in both the short term and in the long term, and remain in place until terminated in accordance with the Consent Decree. The IC monitoring plan must include an inspection schedule, a requirement for an annual confirmation that the zoning designation for the Site remains commercial/industrial, and a requirement for an annual certification to EPA that ICs are in place and remain effective.

      33.    For purposes of Paragraphs 30 and 31 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements,

land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.

34.     If (a) any access or land/water use restriction agreements required by Paragraphs 31(a) or 31(b) this Consent Decree are not obtained within forty-five (45) days of the date of entry of this Consent Decree, or (b) any access easements or restrictive easements required by Paragraph 31(c) of this Consent Decree are not submitted to EPA in draft form within forty-five (45) days of the date of entry of this Consent Decree, or Settling Performing Defendants are unable to obtain an agreement pursuant to Paragraph 31(c) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within forty-five (45) days of the date of entry of this consent decree, the Settling Performing Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Performing Defendants have taken to attempt to comply with Paragraph 31 of this Consent Decree. If Settling Owner Defendant is unable to obtain an agreement pursuant to Paragraph 30(c) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to the Consent Decree, the Settling Owner Defendant shall promptly notify the United States in writing and shall include in that notification a summary of the steps Settling Owner Defendant has taken to attempt to comply with Paragraph 30. The United States may, as it deems appropriate, assist Settling Performing Defendants or Settling Owner Defendant in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Performing Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid for just compensation.

35.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Performing Defendants and Settling Owner Defendant shall cooperate with EPA's and the State's efforts to secure such governmental controls.

36.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

X.     Reporting Requirements

37.     In addition to any other requirement of this Consent Decree, Settling Performing Defendants shall submit to EPA and the State two (2) copies or a single electronic copy of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Performing Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans

21

and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Performing Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Performing Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Performing Defendants pursuant to Paragraph 58(b) of Section XIV (Certification of Completion). If requested by EPA, Settling Performing Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work. If no significant action is occurring, the frequency of the reports may be revised by EPA or, upon approval by EPA, the reports may not be required.

38.    The Settling Performing Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than 7 days prior to the performance of the activity.

39.    Upon the occurrence of any event during performance of the Work that Settling Performing Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Performing Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

40.    Within twenty (20) days of the onset of such an event, Settling Performing Defendants shall furnish to Plaintiff a written report, signed by the Settling Performing Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Settling Performing Defendants submit a report setting forth all actions taken in response thereto.

41.    Settling Performing Defendants shall submit two (2) copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Performing Defendants shall simultaneously submit two (2) copies of all such plans, reports and data to the State. Upon request by EPA, Settling Performing Defendants shall submit in electronic form all portions of any report or other deliverable Settling Performing Defendants are required to submit pursuant to the provisions of this Consent Decree.

42.     All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

XI.     EPA Approval of Plans and Other Submissions

43.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Performing Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Performing Defendants at least one notice of deficiency and an opportunity to cure within thirty (30) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

44.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 43(a), (b), or (c), Settling Performing Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 43(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

45.     Resubmission of Plans.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 43(d), Settling Performing Defendants shall, within thirty (30) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 46 and 47.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 43(d), Settling Performing Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Performing Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

46.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Performing Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or

23

develop the plan, report or other item. Settling Performing Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

47.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Performing Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Performing Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

48.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

XII.    Project Coordinators

49.    Within thirty (30) days of lodging this Consent Decree, Settling Performing Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Performing Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Performing Defendants' Project Coordinator shall not be an attorney for any of the Settling Performing Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

50.    Plaintiff may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

51.     EPA's Project Coordinator and the Settling Performing Defendants' Project Coordinator will meet, as appropriate.

XIII.     Performance Guarantee

52.     In order to ensure the full and final completion of the Work, Settling Performing Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $2.1 Million dollars ($2,100,000) (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

    a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

    b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency; or

    c.     A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency.

53.     Settling Performing Defendants have selected, and EPA has approved, as an initial Performance Guarantee one or more irrevocable letters of credit pursuant to Paragraph 52(b) supplemented by a trust fund pursuant to Paragraph 52(c) and a surety bond pursuant to Paragraph 52(c), in the forms attached hereto as Appendix F. Within thirty (30) days after entry of this Consent Decree, Settling Performing Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix F, and such Performance Guarantee(s) shall thereupon be fully effective. Within sixty (60) days of entry of this Consent Decree, Settling Performing Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree, with a copy to the United States and EPA as specified in Section XXVI. The Performance Guarantee instruments or other documents may be submitted as business confidential or privileged pursuant to Paragraph 113.

54.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Performing Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Performing Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in EPA's estimated cost of completing the Work or for any other reason, Settling Performing Defendants, within thirty (30) days of receipt of

notice of EPA's determination or, as the case may be, within thirty (30) days of any Settling Performing Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 52 of this Consent Decree that satisfies all requirements set forth in this Section XIII. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Performing Defendants shall follow the procedures set forth in Paragraph 56(b) of this Consent Decree. Settling Performing Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Performing Defendants to complete the Work in strict accordance with the terms hereof.

55.     The commencement of any Work Takeover pursuant to Paragraph 99 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 52, and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, Settling Performing Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

56.     <u>Modification of the Amount and/or Form of Performance Guarantee</u>.

a.     <u>Reduction of Amount of Performance Guarantee</u>. If Settling Performing Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 52 above, Settling Performing Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Performing Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Performing Defendants shall follow the procedures set forth in Paragraph 56(b) of this Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Performing Defendants of such decision in writing. After receiving EPA's written acceptance, Settling Performing Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Performing Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 54 or 56(b) of this Consent Decree.

     b.     <u>Change of Form of Performance Guarantee</u>.

     (1)     If, after entry of this Consent Decree, Settling Performing Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Performing Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 56(b)(2) of this Consent Decree. Any decision made by EPA on a petition submitted under this subparagraph (b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Performing Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

     (2)     Settling Performing Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Performing Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree. EPA shall notify Settling Performing Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph. Within thirty (30) days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Performing Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Performing Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within sixty (60) days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree, with a copy to the United States and EPA as specified in Section XXVI.

     c.     <u>Release of Performance Guarantee</u>. If Settling Performing Defendants receive written notice from EPA in accordance with Paragraph 58 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Performing Defendants in writing, Settling Performing Defendants may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Performing Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph. In the event of a dispute, Settling Performing Defendants may release, cancel, or discontinue the Performance

27

Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

## XIV.  Certification of Completion

57.  Completion of the Remedial Action.

a.  Within ninety (90) days after Settling Performing Defendants conclude that the Remedial Action has been fully performed - including, if necessary, the Contingency Groundwater Remedial Measures - and the Performance Standards have been attained, Settling Performing Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Performing Defendants and EPA. If, after the pre-certification inspection Settling Performing Defendants believe that the Remedial Action has been fully performed and the Performance Standards have been attained Settling Performing Defendants shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to XI (EPA Approval of Plans and Other Submissions) within sixty (60) days of the inspection. In the report, a registered professional engineer and the Settling Performing Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Performing Defendant or the Settling Performing Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved EPA will notify Settling Performing Defendants in writing of the activities that must be undertaken by Settling Performing Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Performing Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15(b). EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Performing Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Performing Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.  If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the

State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved EPA will so certify in writing to Settling Performing Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Performing Defendants' obligations under this Consent Decree.

58.    Completion of the Work.

a.    Within ninety (90) days after Settling Performing Defendants conclude that all phases of the Work (including O&M), have been fully performed, Settling Performing Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Performing Defendants, EPA, and the State. If, after the pre-certification inspection Settling Performing Defendants believe that the Work has been fully performed, Settling Performing Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree, within ninety (90) days of the inspection. The report shall contain the following statement, signed by a responsible corporate official of a Settling Performing Defendant or the Settling Performing Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Performing Defendants in writing of the activities that must be undertaken by Settling Performing Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Performing Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15(b). EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Performing Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Performing Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Performing Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Performing Defendants in writing.

29

XV.    Emergency Response

59.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Performing Defendants shall, subject to Paragraph 60, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Performing Defendants shall notify the EPA Emergency Response Unit, Region 5. Settling Performing Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Performing Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State, takes such action instead, Settling Performing Defendants shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

60.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, to: a) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

XVI.    Payments for Response Costs

61.    Payments for Past Response Costs.

a.    Within thirty (30) days of the Effective Date, Settling Defendants shall pay to EPA $475,000 in payment for full and complete satisfaction of Settling Defendants' obligation and commitment to reimburse EPA for its Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number _____ EPA Site/Spill ID Number 0521, and DOJ Case Number 90-11-3-09505. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Northern District of Ohio following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day. At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

b.    The total amount to be paid by Settling Defendants pursuant to Subparagraph 61(a) shall be deposited in the Chemical Recovery Systems Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response

30

*actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.*

62.    Payments for Future Response Costs.

a.    Settling Performing Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan. On a periodic basis the United States will send Settling Performing Defendants a bill requiring payment that includes an Itemized Cost Summary and a DOJ cost summary. Settling Performing Defendants shall make all payments within thirty (30) days of Settling Performing Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 64, according to the following procedures:

(1)    If the payment amount demanded in the bill is more than $10,000, payment shall be made by Electronics Funds Transfer ("EFT"), the Automated Clearinghouse ("ACH") for receiving U.S. currency, or payment through the U.S. Department of Treasury website (www.pay.gov), in accordance with current procedures available to Settling Performing Defendants from EPA Region 5. Payment shall be accompanied by a statement identifying the name and address of the party(ies) making payment, the Site name, EPA Region 5, the Site/Spill ID Number 0521, and the Court docket number for this action.

(a)    Electronic Fund Transfers should be sent to the Federal Reserve Bank of New York, 33 Liberty Street, New York, NY 10045, and include the ABA No. 02103004, and Account No. 68010727. In the Field Tag 4200 of the Fedwire message enter "D 68010727 Environmental Protection Agency."

(2)    If the amount demanded in the bill is $10,000 or less, the Settling Performing Defendants may in lieu of the procedures in subparagraph 62(a)(1) make all payments required by this Paragraph by a certified or cashier's check or checks payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 0521, and DOJ Case Number 90-11-309505. Settling Performing Defendants shall send the check(s) to:

U.S. Environmental Protection
Agency
Superfund Payments
Cincinnati Finance Center
PO Box 979076
St. Louis, MO 63197-9000

b.    At the time of payment, Settling Performing Defendants shall send notice that payment has been made to the United States, to EPA, and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

63.    The total amount to be paid by Settling Performing Defendants pursuant to Paragraph 62 shall be deposited in the Chemical Recovery Systems Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response

actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

64.     Settling Performing Defendants may contest payment of any Future Response Costs under Paragraph 62 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within thirty (30) days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Performing Defendants shall within the thirty (30) day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 62. Simultaneously, the Settling Performing Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Ohio and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Performing Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Performing Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Performing Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 62. If the Settling Performing Defendants prevail concerning any aspect of the contested costs, the Settling Performing Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 62; Settling Performing Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Performing Defendants' obligation to reimburse the United States for its Future Response Costs.

65.     In the event that the payments required by Subparagraph 61(a) are not made within thirty (30) days of the Effective Date or the payments required by Paragraph 62 are not made within thirty (30) days of the Settling Performing Defendants' receipt of the bill, Settling Performing Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Performing Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Performing Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 81. The Settling Performing Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 62.

66.     As negotiated between Settling Performing Defendants and Settling Non-Performing Defendants, each Settling Non-Performing Defendant shall pay to Settling Performing Defendants, no later than fifteen (15) days after this Consent Decree is lodged with the Court, all monies necessary to satisfy the claims of the Settling Performing Defendants against the Settling Non-Performing Defendants arising pursuant to this Consent Decree. The monies paid by the Settling Non-Performing Defendants shall be deposited into a trust account and used exclusively to pay for Site-related costs. The amount to be paid has been the subject of an invoice submitted to each Settling Non-Performing Defendant by the Settling Performing Defendants. At the time of payment of the invoiced amount to the Settling Performing Defendants, each Settling Non-Performing Defendant shall send notice that payment has been made to the United States and to EPA in accordance with Section XXVI (Notices and Submissions). In the event a Settling Non-Performing Defendant fails to make timely payment under this Paragraph, such Settling Non-Performing Defendant shall pay Interest on the unpaid balance to Settling Performing Defendants. Interest shall begin to accrue on the date payment was due. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs or Settling Performing Defendants by virtue of Settling Non-Performing Defendants' failure to make timely payment under this Consent Decree.

## XVII.  Indemnification and Insurance

67.     Settling Performing Defendants' Indemnification of the United States.

a.      The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Performing Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Performing Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Performing Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Performing Defendants nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give Settling Performing Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 67, and shall consult with Settling Performing Defendants prior to settling such claim.

33

68.     Settling Performing Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Performing Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

69.     No later than fifteen (15) days before commencing any on-site Work, Settling Performing Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 57(b) of Section XIV (Certification of Completion), comprehensive general liability insurance with limits of five million dollars, combined single limit, and automobile liability insurance with limits of five million dollars, combined single limit, naming the United States and the State as additional insureds. In addition, for the duration of this Consent Decree, Settling Performing Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Performing Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Performing Defendants shall provide to EPA and the State certificates of such insurance and a copy of each insurance policy. Settling Performing Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Performing Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Performing Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. Force Majeure

70.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Performing Defendants, of any entity controlled by Settling Performing Defendants, or of Settling Performing Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Performing Defendants' best efforts to fulfill the obligation. The requirement that the Settling Performing Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

71.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Performing Defendants shall notify orally EPA's Project Coordinator or, in his or her absence,

34

EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within 7 days of when Settling Performing Defendants first knew that the event might cause a delay. Within 10 days thereafter, Settling Performing Defendants shall provide in writing to EPA either (a) a notice that, after further investigation, no delay in performance is expected, or (b) a written explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Performing Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Performing Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Performing Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Performing Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Performing Defendants shall be deemed to know of any circumstance of which Settling Performing Defendants, any entity controlled by Settling Performing Defendants, or Settling Performing Defendants' contractors knew or should have known.

72.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Performing Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Performing Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

73.     If the Settling Performing Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than fifteen (15) days after receipt of EPA's notice. In any such proceeding, Settling Performing Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Performing Defendants complied with the requirements of Paragraphs 70 and 71, above. If Settling Performing Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Performing Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.  Dispute Resolution

74.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants and Settling Owner Defendant that have not been disputed in accordance with this Section. Nothing herein shall give Settling Owner Defendant the right to initiate Dispute Resolution regarding obligations assigned to Settling Performing Defendants in this Consent Decree and the SOW.

75.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

76.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within thirty (30) days after the conclusion of the informal negotiation period, Settling Defendants or Settling Owner Defendant invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants or Settling Owner Defendant.  The Statement of Position shall specify the Settling Defendants' or Settling Owner Defendant's position as to whether formal dispute resolution should proceed under Paragraph 77 or Paragraph 78.

b.     Within thirty (30) days after receipt of Settling Defendants' or Settling Owner Defendant's Statement of Position, EPA will serve on Settling Defendants or Settling Owner Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 77 or 78.  Within twenty (20) days after receipt of EPA's Statement of Position, Settling Defendants or Settling Owner Defendant may submit a Reply.

c.     If there is disagreement between EPA and the Settling Defendants or Settling Owner Defendant as to whether dispute resolution should proceed under Paragraph 77 or 78, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if the Settling Defendants or Settling Owner Defendant ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 77 or 78.

77.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set

36

forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants or Settling Owner Defendant regarding the validity of the ROD's provisions.

        a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

        b.     The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 77(a).  This decision shall be binding upon the Settling Defendants or Settling Owner Defendant, subject only to the right to seek judicial review pursuant to Paragraph 77(c) and (d).

        c.     Any administrative decision made by EPA pursuant to Paragraph 77(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants or Settling Owner Defendant with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendants' or Settling Owner Defendant's motion.

        d.     In proceedings on any dispute governed by this Paragraph, Settling Defendants or Settling Owner Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 77(a).

     78.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.     Following receipt of Settling Defendants' or Settling Owner Defendant's Statement of Position submitted pursuant to Paragraph 76, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on the Settling Defendants or Settling Owner Defendant unless, within thirty (30) days of receipt of the decision, the Settling Defendants or Settling Owner Defendant file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' or Settling Owner Defendant's motion.

37

b.    Notwithstanding Paragraph L of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

79.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants or Settling Owner Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 87. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants or Settling Owner Defendant do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

XX.    <u>Stipulated Penalties</u>

80.    Settling Defendants and Settling Owner Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraph 81 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Performing Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

81.    a.    <u>Stipulated Penalty Amounts - Payment</u>. The following stipulated penalties shall accrue per violation per day for Settling Defendants:

| **Violation** | **Penalty Per Day** | | |
| --- | --- | --- | --- |
| | **Up to 30 Days** | **Up to 60 Days** | **Over 60 Days** |
| Failure to make timely payment | $2,500 | $5,000 | $10,000 |

b.    <u>Stipulated Penalty Amounts – Recording Covenant</u>. The following stipulated penalties shall accrue per violation per day for Settling Owner Defendant:

| **Violation** | **Penalty Per Day** | | |
| --- | --- | --- | --- |
| | **Up to 30 Days** | **Up to 60 Days** | **Over 60 Days** |
| Failure to record Restrictive Covenants | $1,000 | $2,000 | $3000 |

    c.    <u>Stipulated Penalty Amounts - Work</u>. The following stipulated penalties shall accrue per violation per day for Settling Performing Defendants:

| Violation | Penalty Per Day | | |
|---|---|---|---|
| | Up to 30 Days | Up to 60 Days | Over 60 Days |
| **Failure to submit Progress Reports:** | | | |
| Monthly (or at such lesser frequency approved by EPA) | $100 | $500 | $1,000 |
| Semi-annually | $200 | $1,000 | $2,000 |
| Annually | $200 | $1,000 | $2,000 |
| **Failure to submit the following plans:** | | | |
| Remedial Design Work Plan (and any associated plans) | | | |
|     Draft | $1,000 | $2,000 | $3,000 |
|     Final | $2,000 | $3,000 | $4,000 |
| Preliminary Design | $1,500 | $2,000 | $3,000 |
| Intermediate Design (and any associated plans) | $1,500 | $2,000 | $3,000 |
| Pre-final/Final Design (and any associated plans) | $2,500 | $3,000 | $5,000 |
| Remedial Action Work Plan (and any associated plans) | | | |
|     Draft | $1,000 | $2,000 | $3,000 |
|     Final | $3,000 | $4,000 | $5,000 |
| **Implementation of Work without obtaining EPA's approval to proceed (except as provided in Paragraphs 11.c and 12.c)** | $5,000 | $10,000 | $15,000 |
| **Failure to provide notice for or take action to abate an Endangerment under Section XV** | $5,000 | $10,000 | $15,000 |
| **Other Plans and Reports required by the CD and/or SOW** | $2,000 | $3,000 | $4,000 |
| **Construction Completion Report** | $3,000 | $4,000 | $5,000 |

| Violation | Penalty Per Day | | |
| --- | --- | --- | --- |
| | Up to 30 Days | Up to 60 Days | Over 60 Days |
| Remedial Action Completion Report | $3,000 | $4,000 | $5,000 |
| Completion of Work Report | $3,000 | $4,000 | $5,000 |
| **Failure to meet any deadline imposed by the SOW or any plan which is prepared pursuant to Section VI (Performance of the Work by Settling Performing Defendants) or the Institutional Controls Work Plan or the Technical Assistance Plan or the Additional Studies Work Plan or the Proposal for Action (SOW, Section II.M.1) and approved by EPA, unless a stipulated penalty for such violation is more specifically listed in this Paragraph** | $3,000 | $4,000 | $5,000 |

82.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 99 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Performing Defendants shall be liable for a stipulated penalty in the amount of $500,000, which is not a daily penalty.

83.    All daily penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Performing Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 77(b) or 78(a) of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Performing Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

84.    Following EPA's determination that Settling Defendants or Settling Owner Defendant have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants or Settling Owner Defendant written notification of the same and describe the noncompliance.  EPA may send the Settling Defendants or Settling Owner Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants or Settling Owner Defendant of a violation.

85. All penalties accruing under this Section shall be due and payable to the United States within thirty (30) days of the Settling Defendants' or Settling Owner Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendants or Settling Owner Defendant invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to the regional lockbox at: U.S. Environmental Protection Agency, Region 5, P.O. Box 371531, Pittsburgh, PA 15251-7531, and shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID Number 0521, the DOJ Case Number 90-11-3-09505, and the name and address of the party making payment. Copies of checks paid pursuant to this Section, and any accompanying transmittal letters, shall be sent to the United States as provided in Section XXVI (Notices and Submissions), and to any other EPA officials designated by EPA.

86. The payment of penalties shall not alter in any way Settling Performing Defendants' or Settling Owner Defendant's obligation to complete the performance of the Work required under this Consent Decree.

87. Penalties shall continue to accrue as provided in Paragraph 85 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within fifteen (15) days of the agreement or the receipt of EPA's decision or order;

b. If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants or Settling Owner Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c. If the District Court's decision is appealed by any Party, Settling Defendants or Settling Owner Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants or Settling Owner Defendant to the extent that they prevail.

88. If Settling Defendants or Settling Owner Defendant fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendants or Settling Owner Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 85.

89. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' or Settling Owner Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil

penalties pursuant to Section 122(1) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

90.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.    Covenants Not to Sue by Plaintiff

91.    In consideration of the actions that will be performed and the payments that will be made by the Settling Performing Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 94, 95, 96 and 97 of this Section, the United States covenants not to sue or to take administrative action against Settling Performing Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 61(a) of Section XVI (Payments for Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 58(b) of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Performing Defendants and do not extend to any other person.

92.    In consideration of the payments that will be made by the Settling Non-Performing Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraphs 97 and 98 (General Reservation of Rights), the United States covenants not to sue or to take administrative action against Settling Non-Performing Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. These covenants not to sue shall take effect as to each Settling Non-Performing Defendant upon the receipt by EPA of the payments required by Paragraph 61(a) of Section XVI (Payments for Response Costs). These covenants not to sue are conditioned upon the satisfactory performance by Settling Non-Performing Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Non-Performing Defendants and do not extend to any other person. With respect to each Settling Non-Performing Defendant individually, this covenant not to sue is conditioned upon the satisfactory performance of its obligations under this Consent Order and the veracity of the information it provided to EPA relating to its involvement with the Site.

93.    In consideration of the actions that will be performed by the Settling Owner Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 94, 95, 96, and 97 of this Section, the United States covenants not to sue or to take administrative action against Settling Owner Defendant pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the recording of the easement pursuant to Paragraph 30. With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 58(b) of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Owner Defendant of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Owner Defendant and do not extend to any other person.

94.     a.     <u>United States' Pre-Certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Performing Defendants and Settling Owner Defendant:

(1).     To perform further response actions relating to the Site, or

(2).     To reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

(i)     conditions at the site, previously unknown to EPA, are discovered, or

(ii)     information, previously unknown to EPA is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

b.     Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Performing Defendants and Settling Owner Defendant with respect to liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15 (Modification of the SOW or Related Work Plans).

95.     <u>United States' Post-Certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Performing Defendants and Settling Owner Defendant:

a.     To perform further response actions relating to the Site, or

b.     To reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(1)     conditions at the site, previously unknown to EPA, are discovered, or

(2)     information, previously unknown to EPA is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

96.     For purposes of Paragraph 94, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 95, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

97.     General reservations of rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants and Settling Owner Defendant with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants and Settling Owner Defendant with respect to:

        a.      claims based on a failure by a Settling Defendant or Settling Owner Defendant to meet a requirement of this Consent Decree applicable to it;

        b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

        c.      liability based upon the Settling Defendants' or Settling Owner Defendant's ownership or operation of the Site, or upon the Settling Defendants' or Settling Owner Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants or Settling Owner Defendant;

        d.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        e.      criminal liability; and

        f.      liability for violations of federal or state law which occur during or after implementation of the Remedial Action.

98.     Notwithstanding any other provision in this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings against any individual Settling Non-Performing Defendant in this action or in a new action or to issue an administrative order to any individual Settling Non-Performing Defendant seeking to compel that Settling Non-Performing Defendant to perform response actions relating to the Site, and/or to reimburse the United States for additional costs of response, if information is discovered which indicates that such Settling Non-Performing Defendant contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effects that such Settling Non-Performing Defendant no longer qualifies as a *de minimis* party at the Site because Settling Non-Performing Defendant contributed greater than 1% of the hazardous substances at the Site, or

44

contributed hazardous substances which are significantly more toxic or are of significantly greater hazardous effect than other hazardous substances at the Site.

99.     Work Takeover.

    a.     In the event EPA determines that Settling Performing Defendants have (i) ceased implementation of any portion of the Work, (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Performing Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Performing Defendants a period of thirty (30) days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

    b.     If, after expiration of the thirty (30) day notice period specified in Paragraph 99(a), Settling Performing Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Performing Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 99(b).

    c.     Settling Performing Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 77, to dispute EPA's implementation of a Work Takeover under Paragraph 99(b). However, notwithstanding Settling Performing Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 99(b) until the earlier of (i) the date that Settling Performing Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XIX (Dispute Resolution), Paragraph 77, requiring EPA to terminate such Work Takeover.

    d.     After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XIII of this Consent Decree, in accordance with the provisions of Paragraph 55 of that Section. If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and the Settling Performing Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 55, any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Performing Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

    100.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

45

## XXII.  Covenants by Settling Defendants and Settling Owner Defendant

101.  Covenant Not to Sue.  Subject to the reservations in Paragraph 102, Settling Defendants and Settling Owner Defendant hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

a.  any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.  any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

c.  any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Ohio Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 104 (Waiver of Claims Against De Micromis Parties), Paragraph 105 (Waiver of Claims Against De Minimis Parties), and Paragraph 111 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 94, 95, 97 and 98, but only to the extent that Settling Defendants' or and Settling Owner Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

102.  The Settling Defendants and Settling Owner Defendant reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' or Settling Owner Defendant plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

103.  Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

104.  Settling Defendants and Settling Owner Defendant agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site,

including for contribution, against any person where the person's liability to Settling Defendants or Settling Owner Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

        a.    the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

        b.    This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant or Settling Owner Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant or Settling Owner Defendant.

       105.    Settling Defendants and Settling Owner Defendant agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person that has entered into a final CERCLA § 122(g) de minimis settlement with EPA with respect to the Site as of the Effective Date. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant or Settling Owner Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant or Settling Owner Defendant.

       106.    Settling Defendants and Settling Owner Defendant agree not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from performance of the Work in any way affected the basis for listing the Site.

## XXIII. Effect of Settlement; Contribution Protection

       107.    Except as provided in Paragraph 104 (Waiver of Claims Against De Micromis Parties) and Paragraph 105 (Waiver of Claims Against De Minimis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 104 (Waiver of Claims Against De Micromis Parties) and Paragraph 105 (Waiver of Claims Against De Minimis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

       108.    The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement, and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2) and 122(g)(5), 42 U.S.C. § 9613(f)(2) and 9622(g)(5), or as may be otherwise provided by law, for matters addressed in this Consent Decree. For the purposes of this Consent

Decree, "matters addressed" are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site by the United States or any other person; provided, however, that if the United States exercises rights under the reservations in Section XXI (Covenants Not to Sue by Plaintiff), other than in Paragraph 97(a), (e), or (f), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

109.    The Settling Defendants and Settling Owner Defendant agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim.

110.    The Settling Defendants and Settling Owner Defendant also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States within 10 days of service of the complaint on them. In addition, Settling Defendants and Settling Owner Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

111.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants and Settling Owner Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

XXIV. Access to Information

112.    Settling Defendants and Settling Owner Defendant shall provide to EPA and the State, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Performing Defendants and Settling Owner Defendant shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

113.    Business Confidential and Privileged Documents.

a.    Settling Defendants or Settling Owner Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2,

48

Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the State, or if EPA has notified Settling Defendants or Settling Owner Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants or Settling Owner Defendant.

        b.     The Settling Defendants or Settling Owner Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants or Settling Owner Defendant assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Settling Defendants or Settling Owner Defendant. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

      114.    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  Retention of Records

      115.    Until 10 years after the Settling Performing Defendants' receipt of EPA's notification pursuant to Paragraph 58(b) of Section XIV (Certification of Completion of the Work), each Settling Defendant and Settling Owner Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Performing Defendant or Settling Owner Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Performing Defendant or Settling Owner Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

      116.    At the conclusion of this document retention period, Settling Defendants and Settling Owner Defendant shall notify the United States and the State at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the United States or the

State, Settling Defendants shall deliver any such records or documents to EPA or the State.  The Settling Defendants or Settling Owner Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants or Settling Owner Defendant assert such a privilege, they shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants or Settling Owner Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

117.    Each Settling Defendant or Settling Owner Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

XXVI. Notices and Submissions

118.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, Settling Owner Defendant, and the Settling Defendants, respectively.

As to the United States:          Chief, Environmental Enforcement Section
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, D.C.  20044-7611
                                  Re: DJ # 90-11-3-09505
and
As to EPA:                        Richard C. Karl Director, Superfund Division
                                  EPA, Region 5, Mail Code: S-6J
                                  77 W Jackson Blvd., Chicago, IL  60604-3590

                                  Mary Tierney
                                  EPA Project Manager/Coordinator,
                                  U.S. EPA Region 5, Mail Code SR-6J
                                  77 W Jackson Blvd., Chicago, IL  60604-3590

Thomas C. Nash
Associate Regional Counsel
U.S. EPA Region 5, Mail Code C-14J
77 W Jackson Blvd., Chicago, IL  60604-3590

As to EPA's Regional Financial Management Officer:

Comptroller's Office
U.S. EPA Region 5, Mail Code: MF-10J
77 W Jackson Blvd., Chicago, IL  60604-3590

As to the State:

Lawrence J. Antonelli
State Project Coordinator
Ohio Environmental Protection Agency Division
of Emergency and Remedial Response Northeast
District Office
2110 East Aurora Rd.
Twinsburg, Ohio  44087

As to the Settling Performing Defendants:

Larry Mencin
Settling Performing Defendants' Project
Coordinator
c/o Sherwin Williams
101 Prospect Avenue, NW
Cleveland, Ohio  44115-1075

As to the Settling Defendants:

Douglas A. McWilliams
CRS Site Group Chair
c/o Squire, Sanders & Dempsey L.L.P.
127 Public Square
4900 Key Tower
Cleveland, Ohio  44114-1304

As to the Settling Owner Defendant:

Dorothy Obitts
1130 Gulf Road
Elyria, OH 44035-1754

## XXVII.    EFFECTIVE DATE

119.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII.    RETENTION OF JURISDICTION

120.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants or Settling Owner Defendant for the duration of the performance of

the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

121.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of the Settling Non-Performing Defendants.

"Appendix E' is the draft easement.

"Appendix F" is the performance guarantee form.

## XXX. Community Relations

122.    Settling Performing Defendants shall propose to EPA and the State their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Performing Defendants under the Plan. Settling Performing Defendants shall also cooperate with EPA and the State in providing information regarding the Work to the public. As requested by EPA or the State, Settling Performing Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the State to explain activities at or relating to the Site.

123.    Within 30 days after a request by EPA, Settling Performing Defendants shall submit to EPA a Technical Assistance Plan ("TAP") for providing and administering funds up to $50,000 to pay for eligible services provided by an independent Technical Advisor(s) hired by an eligible Community Group to help the Group interpret and comment on site-related documents developed under this Consent Decree. The TAP shall identify the activities that are eligible and ineligible for reimbursement consistent with 40 CFR 35.4070 and 40 CFR 35.4075. A portion of the funds provided may be used by the Community Group to cover eligible operational expenses. The TAP shall further state that Settling Performing Defendants will provide and administer any additional amounts needed to pay for such services if the Community Group has demonstrated such a need based on the criteria set forth in 40 CFR 35.4065, as more fully set forth in the SOW. If EPA disapproves of or requires revisions to the Technical Assistance Plan, in whole or in part, Settling Performing Defendants shall amend and submit to U.S. EPA a revised TAP that incorporates all of EPA's required revisions, within thirty (30) days of receiving EPA's comments.

Upon its approval by EPA, the TAP shall be incorporated into and become enforceable under this Consent Decree.

124.    a.    An eligible Community Group shall be: 1) a group of people who may be affected by a release or threatened release at the Site; 2) incorporated as a nonprofit organization for the purposes of the Site or otherwise established as a charitable organization that operates within the geographical range of the Site and is already incorporated as a nonprofit organization; and 3) able to demonstrate its capability to adequately and responsibly manage any funds awarded. Further restrictions on eligibility are found at 40 CFR 35.4020 which specifies criteria that make a group ineligible to receive a Technical Assistance Grant ("TAG"). Any group ineligible for a TAG under these criteria shall also be deemed ineligible to receive funds under the TAP.

b.    EPA shall accept applications from Community Groups. EPA shall identify, from among the applications it receives which community groups are eligible to receive funds. The Settling Performing Defendants shall select the Community Group which will receive funding from among the group(s) identified by EPA. The Settling Performing Defendants shall provide funds to the selected Community Group as more fully set forth in the SOW.

## XXXI. MODIFICATION

125.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Performing Defendants or Settling Owner Defendant. All such modifications shall be made in writing.

126.    Except as provided in Paragraph 15 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendants and/or Settling Owner Defendant, and shall be effective upon approval by the Court. Except as provided in Paragraph 15 (Modification of SOW or Related Work Plans), non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants and/or Settling Owner Defendant. A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

127.    Modifications (non-material or material) that do not affect the obligations of or the protections afforded to Settling Non-Performing Defendants may be executed without the signatures of Settling Non-Performing Defendants.

128.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

129.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA,

42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants and Settling Owner Defendant consent to the entry of this Consent Decree without further notice.

130.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties and shall be considered an inadmissible offer to compromise under Federal Rule of Evidence 408.

## XXXIII.    SIGNATURES/SERVICE

131.    Each undersigned representative of a Settling Defendant or Settling Owner Defendant to this Consent Decree and the undersigned delegate of the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

132.    Each Settling Defendant and Settling Owner Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants and Settling Owner Defendant in writing that it no longer supports entry of the Consent Decree.

133.    Each Settling Defendant and Settling Owner Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants and Settling Owner Defendant hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The Parties agree that Settling Defendants and Settling Owner Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV.    FINAL JUDGMENT

134.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

135.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants and Settling Owner Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS _____ DAY OF _____, 2010.


 s/ Kathleen M. O'Malley_____
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel et al., relating to the Chemical Recovery Systems Superfund Site.

For The United States Of America003A

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

4/29/2010
Date

W. BENJAMIN FISHEROW
Deputy Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.S. Box 7611
Washington, D.C.  20044-7611

5/3/2010
Date

KRISTIN M. FURRIE
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: (202) 616-6515
Fax: (202) 616-6584
Email: Kristin.Furrie@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel et al., relating to the Chemical Recovery Systems Superfund Site.

STEVEN M. DETTELBACH
United States Attorney
Northern District of Ohio

May 3, 2010
Date

By: s/Steven J. Paffilas
STEVEN J. PAFFILAS
Assistant United States Attorney
Northern District of Ohio
U.S. Department of Justice
801 West Superior Avenue, Suite 400
Cleveland, Ohio  44113-1852

57

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel et al., relating to the Chemical Recovery Systems Superfund Site.

For the Environmental Protection Agency:

_____
Date  3/19/10

_____
RICHARD C. KARL
Director, Superfund Division
Region 5, Mail Code S-6J
Environmental Protection Agency
77 W Jackson Blvd., Chicago, IL  60604-3590

_____
Date  2/25/10

_____
THOMAS C. NASH
Associate Regional Counsel
Region 5, Mail Code C-14J
U.S. Environmental Protection Agency
77 W Jackson Blvd., Chicago, IL  60604-3590

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Dorothy Obitts:

FEB 24, 2010
Date

Signature: _Dorothy Kathleen Obitts_

Name (print): _DOROTHY KATHLEEN OBITTS_

Title: _INDIVIDUAL & TRUSTEE_

Address: _1130 GULF RD,_

_ELYRIA, OHIO 44635_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _DOUGLAS C. DUBENA_

Title: _____

Address: _133 CRESTVIEW DR._

_ELYRIA, OHIO 44035_

Ph. Number: _440-366-1066_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For CNA Holdings LLC (Celanese):

1-15-10
Date

Signature: _____

Name (print): Steven M. Sterin

Title: Senior VP & CFO

Address: 1601 W. LBJ Frwy.

          Dallas, TX 75234

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Gary M. Rowen

Title: Associate General Counsel

Address: 1601 W. LBJ Freeway

          Dallas, TX 75234

Ph. Number: 972-443-4525

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Akzo Nobel Paints LLC (f/k/a The Glidden Company):

Date 1/22/10

Signature *Catherine M McKinley*

Name (print): CATHERINE M McKinley

Title: CFO

Address: 15885 W. SPRAGUE Road

Strongsville, Ohio 44136

Legal Affairs Department
Approved As To Form
1/22/10
Attorney

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  William J. Krueger

Title:  Senior Legal Counsel
       Akzo Nobel Paints LLC
Address: 15885 W. Sprague Road

       Strongsville, OH  44136

Ph. Number:  (440) 297-8399

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For The Goodyear Tire & Rubber Company:


January 14, 2010
Date

ATTEST:
Assistant Secretary

Signature:

Name (print):  Donald E Stanley

Title:  VP, Product Quality & Plant Technology

Address:  1144 East Market Street

Akron, OH  44316


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Steven C Bordenkircher

Title:  Attorney

Address:  1144 East Market Street

Akron, OH  44316

Ph. Number:  (330) 796-6738

62

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Chevron Environmental Management Company, for itself and on behalf of Kewanee Industries, Inc.:

_1/14/10_
Date

Signature: _Robert R John_

Name (print): _Robert R. John_

Title: _Assistant Secretary_

Address: _6111 Bollinger Canyon Road_
_San Ramon, CA 94583_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Corporation Service Company_

Title: _____

Address: _50 West Broad Street, Suite 1800_
_Columbus, OH 43215_

Ph. Number: _800 222 2122_

63

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For ~~THE STATE OF WISCONSIN COMPANY~~ PPG Industries, Inc.

_11/29/10_
Date

Signature: _John C. Richter_

Name (print): _John Richter_

Title: _Vice President, EHS_

Address: One PPG Place

_Pittsburgh, PA 15272_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Steve Faeth_

Title: _Sr. Counsel, EHS_

Address: _One PPG Place_

_Pittsburgh, PA 15272_

Ph. Number: _(412) 434-3799_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For The Sherwin Williams Company:

January 12, 2010
Date

Signature:

Name (print): Louis E. Stellato

Title: Senior Vice President, General Counsel & Secretary

Address: 101 W. Prospect Ave., 1200 Midland Bldg., Cleveland, OH 44115-1075

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Allen J. Danzig, Esq.

Title: Associate General Counsel - Environmental

Address: 101 W. Prospect Avenue, 1100 Midland Bldg Cleveland, OH 44115-1075

Ph. Number: 216-566-2482

65

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For United States Steel Corporation (f/k/a USX Corporation) and its subsidiaries and on behalf of Alside, Inc.:

JANUARY 6, 2010
_____
Date

Signature: _____

Name (print):   James D. Garraux

Title:        General Counsel &
              Senior Vice President –
              Corporate Affairs

Address:      United States Steel Corporation
              600 Grant Street
              Pittsburgh, PA  15219-2800

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:         Andrew G. Thiros

Title:        Attorney - Environmental

Address:      United States Steel Corporation
              600 Grant Street, Suite 1500
              Pittsburgh, PA  15219-2800

Ph. Number:   412.433.2983

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Avery Dennison Corporation:

2/2/2010
Date

Signature: _Scott Snyder_

Name (print): Scott Snyder

Title: Director – Environmental Services

Address: 8080 Norton Parkway

Mentor, Ohio 44060

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company

Title: _____

Address: Corporation Trust Center

1209 Orange Street - Willmington, DE 19805

Ph. Number: 302/777-0247

67

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Ashland Inc.:

1-19-10
Date

Signature: _Michael S. Roe_

Name (print): Michael S. Roe

Title: Assistant General Counsel

Address: 50 E. River Center Blvd.
Covington, KY 41012

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Richmond L. Williams

Title: Chief Legal Counsel - Environmental Litigation

Address: 1313 N. Market Street
Wilmington, DE 19894

Ph. Number: 302.594.7020

68

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Mattel, Inc. (f/k/a Fisher Price Toys):

2/2/2010
Date

Signature: _____

Name (print): DAVID SMART

Title: SUP GLOBAL SUSTAINABILITY / PRODUCT INTEGRITY-ASIA

Address: 333 CONTINENTAL BLVD. M1-0530 EL SEGUNDO, CA 90245

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

69

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Goodrich Corporation:

1/12/10
Date

Signature: _Bruce Amy_

Name (print): _Bruce Amy_

Title: _Director_

Address: _2230 W Tyvola Rd_
_Charlotte, NC_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Heidi B. Goldstein

Title: Attorney

Address: Thompson Hine LLP
127 Public Square, #3900
Cleveland, OH 44114

Ph. Number: (216) 566-5500

70

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Jamestown Paint & Varnish:

1-7-10
Date

Signature: _Ml P Walton_

Name (print): _Michael P Walton_

Title: _CEO_

Address: _108 MAIN ST_

_JAMESTOWN, PA 16134_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Heidi B. Goldstein

Title:  Attorney

Address:  Thompson Hine LLP
127 Public Square
Suite 3900
Cleveland, OH 44114

Ph. Number:  (216) 566-5500

71

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Alcatel-Lucent USA Inc.:


1/22/2010
Date

Signature: _P D Morrison_

Name (print): _PATRICK D MORRISON_

Title: _VICE PRESIDENT_

Address: _600 MOUNTAIN AVE_

_MURRAY HILL NJ 07973_


Agent Authorized to Accept Service on Behalf of Above-signed Party:


Name (print): Kathleen M Whitby

Title: Spencer Fane Britt + Browne LLP

Address: 1 North Brentwood, Suite 1000

St Louis MO 63105

Ph. Number: 314-863-7733

kwhitby@spencerfane.com


72

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Continental Tire North America, Inc. (f/k/a GenCorp):

2/5/10

Date

Signature: _Paul Holcomb (signature)_

Name (print): _Paul Holcomb_

Title: _Deputy General Counsel_

Address: _1830 MacMillan Park_
_Fort Mill, SC. 29707_

_and_

Signature: _____

Name (print): _____

Title: _____

Address: _____

_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Registered Agent, CT Corporation

Title:

Address:   150 Fayetteville, Street

Suite #1101

Raleigh, NC   27601

Phone Number:    919-821-7139

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Valspar Corporation:

JANUARY 11, 2010
Date

Signature: _____

Name (print): ROLF ENGH

Title: EXECUTIVE VICE PRESID CORPORATE COUNSEL

Address: P.O. BOX 1461

MINNEAPOLIS, MN 55440

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): SUSAN D STEINWALL

Title: ATTORNEY

Address: FREDRIKSON & BYRON 200 S 6TH ST., SUITE 4000 MINNEAPOLIS, MN 55402

Ph. Number: 612 492 - 7171

74

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Southwire Company:

_1/14/10_
Date

Signature: _____

Name (print): _Jeff Herrin_

Title: _EVP, Operations_

Address: _One Southwire Dr_

_Carrollton GA  30119_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Floyd W. Smith_

Title: _EVP, General Counsel_

Address: _One Southwire Dr_

_Carrollton GA  30119_

Ph. Number: _770-832-5712_

75

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Yenkin-Majestic Paint Corporation:

January 14, 2010
Date

Signature: _____

Name (print):  Andrew O. Smith

Title:  Chief Operating Officer

Address:  1920 Leonard Ave.

Columbus, Ohio 43219

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Jonathan M. Petuchowski

Title: President

Address: 1920 Leonard Ave.

Columbus, Ohio 43219

Ph. Number:  (614) 253-8511

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Henkel Corporation for Loctite Corporation as successor to The Dexter Corporation, including the Dexter Hysol Division of The Dexter Corporation, each of which entity or predecessor shall be considered a Settling Non Performing Defendant, a Party and a signatory to this Consent Decree.

January 11, 2010
Date

Signature: _____

Name (print): Paul R. Berry

Title: Senior Vice President, Chief Legal Officer
       & Secretary
Address: One Henkel Way _____

         Rocky Hill, CT 06067 _____


Agent Authorized to Accept Service on Behalf of Above-signed Party:


Name (print): Christopher J. Signorello

Title: Assistant General Counsel, Litigation

Address: Henkel of America, Inc.

         One Henkel Way, Rocky Hill, CT 06067

Ph. Number: 860-571-5211

77

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

Essex Chemical Corporation and Essex Specialty Products LLC (for itself and Jamestown Finishes and Coatings):

_Jan 4 2010_
Date

Signature: _Mary H. Terzino_

Name (print): _Mary H. Terzino_

Title: _Authorized Representative_

Address: _2030 Dow Center_

_Midland, MI 48674_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _CT Corporation_

Title: _____

Address: _1300 E. 9th Street_

_Cleveland, OH 44114_

Ph. Number: _216-621-4270_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Exxon Mobil Corporation;
*including its wholly-owned direct and indirect subsidiaries and affiliates*

Jan. 14, 2010
Date

Signature: _____ W

Name (print):  MICHAEL W. SCHWEHR

Title:  Major Projects Manager

Address:  3225 Gallows Road

FAIRFAX, VA 22037

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Joanne Eaglet

Title:  Project Manager

Address:  3225 Gallows Road, 8B0830

FAIRFAX, VA 22037

Ph. Number:  (703) 846-3354

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Hexcel Corporation:

*13 Jan 2010*
Date

Signature: _A William W_

Name (print):  A. William Nosil

Title: Director Corporate Environmental Engr.

Address:  11711 Dublin Blvd., Dublin, CA 94568

_____


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For AK Steel Corporation:

01-12-2010
Date

Signature: _____

Name (print): David C. Horn

Title: Sr. V-P General Counsel & Secretary

Address: 9227 Centre Pointe Drive

West Chester, OH 45069

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): David C. Horn

Title: Sr. V-P General Counsel & Secretary

Address: 9227 Centre Pointe Drive

West Chester, OH 45069

Ph. Number: 513-425-2690

81

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For E. I. du Pont de Nemours and Company:

January 6, 2010
Date

Signature: _____

Name (print): Maria S. Angelo

Title: Senior Counsel

Address: 1007 Market Street

Wilmington, DE 19898

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

82

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For The Dow Chemical Company:

Jan 5 2010
Date

Signature: _Mary H. Terzino_

Name (print): _Mary H. Terzino_

Title: _Asst. General Counsel_

Address: _2030 Dow Center_

_Midland, MI 48674_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _CT Corporation_

Title: _____

Address: _1300 E. 9th Street_

_Cleveland, OH 44114_

Ph. Number: _216-621-4270_

83

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Ross Consolidated Corp. and Subsidiaries:

Date: 1|12|2010

Signature: _Maureen M Cromling_

Name (print): Maureen M. Cromling

Title: Chairman of the Board

Address: 36790 Giles Road

Grafton, OH  44044

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Patricia R. Lawson

Title: Director, Corporate EHS, Security
& Risk Management

Address: c/o Ross Environmental Services, Inc.
150 Innovation Drive

Elyria, OH  44035

Ph. Number: 440-366-2070

84

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Gordon Terminal Service Company of Pennsylvania:

1/11/10

Date

Signature: _Timothy H. Gordon_

Name (print): _Timothy H. Gordon_

Title: _Vice President_

Address: _P.O. Box 313_

_McKees Rocks, PA 15136_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

THE UNDERSIGNED PARTY *enters into this Consent Decree in the matter of United States v.*
*AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.*

For McGean Worldwide, Inc. (f/k/a McGean-Rohco Worldwide, Inc.) (for R.O Hull):

1/13/2010
_____
Date

Signature: _Kerry H. May_

Name: (print)   Kerry H. May

Title:   Vice President – Finance and Treasurer

Address:  2910 Harvard Ave.

Cleveland, Ohio 44105

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: (print)    A.G.C. Co.

Title:              Agent

Address:    3200 National City Center

Cleveland, Ohio 44114

Ph. Number:    (216) 621-0200

86

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For The Lubrizol Corporation (for R.O. Hull):

Date: 1/12/2010

Signature: _____

Name (print): Greg B. Lewis

Title: VP Global Risk Management & Chief Ethics Officer

Address: The Lubrizol Corporation
29400 Lakeland Blvd.
Wickliffe, OH 44092

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Karen L. Walter

Title: Counsel

Address: The Lubrizol Corporation
29400 Lakeland Blvd.
Wickliffe, OH 44092

Ph. Number: 440-347-5028

87

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Ford Motor Company:

1-5-10
Date

Signature: _Louis J Ghilardi_

Name (print): Louis J. Ghilardi

Title: Assistant Secretary

Address: WHQ, ONE AMERICAN ROAD
Room 1033-A3
DEARBORN, MI 48126

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): DAVID J. WITTEN

Title: ATTORNEY

Address: WHQ, ONE AMERICAN RD, RM. 467-A2
DEARBORN, MI 48126

Ph. Number: 313-845-8176

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Osram Sylvania:

Date: 1-11-10

Signature: _____

Name (print): Stacia A. Christman

Title: Counsel for Osram Sylvania, Inc.

Address: McGuireWoods LLP
625 Liberty Avenue, 23rd Flr.
Pittsburgh, PA 15222


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Stacia A. Christman

Title: Counsel for Osram Sylvania, Inc.

Address: McGuireWoods LLP
625 Liberty Avenue, 23rd Flr.
Pittsburgh, PA 15222

Ph. Number: 412-667-7938

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Carter Oil:                                          Exxon Mobil Corporation *

Jan. 14, 2010
Date

Signature: _____ W

Name (print): MICHAEL W. SCHWEHR

Title: Major Projects Manager

Address: 3225 Gallows Road

FAIRFAX, VA 22037

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): JOANNE EAGLET

Title: Project Manager

Address: 3225 Gallows Rd, RM 8A0830

FAIRFAX, VA 22037

Ph. Number: (703) 846-3354

* Exxon Mobil Corporation, in order to settle its liability under this Consent Decree and at this Site, is also satisfying the obligations of Carter Oil under this Consent Decree. This settlement applies to this Consent Decree only.

90

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Whittaker Corporation, on behalf of itself and its present and former affiliates, subsidiaries and divisions:

12/13/09
Date

Signature: _____

Name (print): Eric G. Lardiere

Title: Vice President and Secretary

Address: 1955 N. Surveyor Avenue

Simi Valley, CA  93063


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Eric G. Lardiere

Title: Vice President and Secretary

Address: 1955 N. Surveyor Avenue

Simi Valley, CA  93063

Ph. Number: (805) 526-5700

91

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Textron, Inc.:

Dec. 30, 2009
Date

Signature: _JM Schiff_

Name (print): _Jamieson Schiff_

Title: _Director Site Remediation_

Address: _Textron Inc._
_40 Westminster St._
_Providence, RI 02903_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Same_

Title: _____

Address: _____

_____

Ph. Number: _401-457-2422_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Beazer East, Inc.:

_1-6-10_
Date

Signature: _Robert S. Markwell_

Name (print): _Robert S. Markwell_

Title: _Vice President_

Address: _One Oxford Centre Suite 3001_
_Pittsburgh, PA 15219_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Lindsay P. Howard, Esq.

Title:  Counsel

Address:  Two Gateway Center, 8th Floor

Pittsburgh, PA  15222

Ph. Number:   (412) 394-5444

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Sequa Corporation:

January 14, 2010
Date

Signature: _Ray Merrell_

Name (print): _Ray Merrell_

Title: _Senior Director, EHS_

Address: _300 Blaisdale Road_

_Orangeburg, NY 10962_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title: _____

Address: _____

_____

Ph. Number: _____

94

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Solvent Resource Recovery: *n/k/a Chemical Waste Management, Inc.*

_14 Jan 2010_
Date

Signature: _J C Forney_

Name (print): _James Forney_

Title: _Area Director - CSMG_

Address: _3965 Okemos Road, Suite B4_

_Okemos, MI 48864_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _James Forney_

Title: _Area Director - CSMG_

Address: _3965 Okemos Road, Suite B4_

_Okemos, MI 48864_

Ph. Number: _517. 381. 0177_

95

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For McKesson Corporation:

January 13, 2010
Date

Signature: _____

Name (print): Nicholas A. Loiacono

Title: Vice President and Treasurer

Address: One Post Street

San Francisco, CA 94104

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Willie C. Bogan

Title: Secretary

Address: One Post Street

San Francisco, CA 94104

Ph. Number: (415) 983-9007

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For The Gerstenslager Company:

1/12/10
Date

Signature: _Dale T Brenkman_

Name (print): DALE T BRENKMAN

Title: VICE PRESIDENT - SECRETARY

Address: 200 OLD WILSON BRIDGE RD

COLUMBUS, OHIO 43085

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): DALE T. BRENKMAN

Title: VICE PRESIDENT - SECRETARY

Address: 200 OLD WILSON BRIDGE RD

COLUMBUS, OHIO 43085

Ph. Number: 614- 438 - 3001

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For Union Carbide Corporation:

Jan 5, 2010
Date

Signature: _Shanon Sly_

Name (print): _Shannon Slowey_

Title: _Authorized Representative_

Address: _100 Independence Mall West_
_Philadelphia, PA 19106_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _CT Corporation_

Title: _____

Address: _1300 E 9th Street_
_Cleveland, OH 44114_

Ph. Number: _216-621-4270_

98

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

 For Pioneer Balloon Company:

12·30·09
Date

Signature: _____

Name (print): Daniel A. Flynn

Title: Vice President / COD

Address: 5000 E. 29th Street North
Wichita, KS 67220

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Joseph M. Reidy

Title: Attorney for Pioneer Balloon Co.

Address: 250 West Street
Columbus, Ohio 43215

Ph. Number: (614) - 462-2207

99

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. AK Steel Corp. et al., relating to the Chemical Recovery Systems Superfund Site.

For BI Liquidation, Inc., f/k/a Bacharach, Inc., successor to Bacharach Instrument Co.:

Signature: _____

_____         Name (print):  Paul M. Zito
Date

Title:   President

Address: c/o Houston Harbaugh, P.C.
         Three Gateway Center, 22nd Floor
         Pittsburgh, PA   15222-1005

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Howard J. Wein

Title:   Attorney

Address: Buchanon Ingersoll & Rooney, P.C.
         One Oxford Centre
         301 Grant Street, 20th Floor
         Pittsburgh, PA   15219

Ph. Number:  412.392.2160

Email Address:  howard.wein@bipc.com

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
AK Steel Corp, et al., relating to the Chemical Recovery Systems Superfund Site.

For HTC Holdings, Inc., f/k/a Hydro Tube Corp.:

January 5, 2010
_____
Date

Signature: _____

Name (print):   Barbara A. Reining_____

Title:   President, HTC Holdings, Inc._

f/k/a Hydro Tube Corp._____

Address: 1600 Morganton Road, W3____

Pinehurst, NC  28374-6861_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   Marsha L. Collett_____

Title:   Attorney_____

Address:  35765 Chester Road_____

Avon, OH  44011-1262_____

Ph. Number:   440-930-8000_____